1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11  KATARINA MARIE COX,                        Case No. 1:20-cv-01520-SAB

12            Plaintiff,                        ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL

13        v.
                                               (ECF Nos. 20, 24, 25)
14  COMMISSIONER OF SOCIAL
    SECURITY,
15
              Defendant.
16

17                                    **I.**

18                           **INTRODUCTION**

19        Katarina Marie Cox ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21  disability benefits pursuant to the Social Security Act.  The matter is currently before the Court

22  on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

23  A. Boone.[1]  Plaintiff submits that: (1) substantial evidence does not support the ALJ's rejection

24  of a treating physician's medical source statement; (2) the ALJ failed to provide clear and

25  convincing reasons for rejecting Plaintiff's symptomology evidence; and (3) the ALJ's mental

26  residual functional capacity finding is not supported by substantial evidence.  For the reasons set

27  forth below, Plaintiff's Social Security appeal shall be denied.

28  ---
    [1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 9, 11, 13.)

## II.

## BACKGROUND

### A.    Procedural History

On January 9, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging a period of disability beginning on January 1, 2013.  (AR 193-94, 195-204.)  Plaintiff's application was initially denied on June 26, 2018, and denied upon reconsideration on September 4, 2018.   (AR 113-117, 120-125.)   Plaintiff requested and received a hearing before Administrative Law Judge Rebecca La Riccia (the "ALJ").  (AR 32-66, 126.)  Plaintiff appeared for a hearing before the ALJ on February 11, 2020.  (AR 32-66.)  On March 4, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 14-31.)  The Appeals Council denied Plaintiff's request for review on August 24, 2020.  (AR 2-7.)

On October 28, 2020, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On June 23, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 14.) On November 3, 2021, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 20.) On January 3, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 24.) On January 18, 2022, Plaintiff filed a reply brief.  (Pl.'s Reply ("Reply"), ECF No. 25.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, March 9, 2020:

- The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

- The claimant engaged in substantial gainful activity during the following periods: 2017 and the third quarter of 2019 (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

- However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity.  The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

- The claimant has the following severe impairments: bipolar disorder, unspecified schizophrenia spectrum and other psychotic disorder, post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

- The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can sustain concentration, persistence, and pace for 2 hour intervals after which she requires a 10 minute break that can be accommodated by morning, afternoon, and lunch breaks. She can occasionally interact with coworkers, supervisors, and the general public.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

- The claimant was born on December 6, 1993, and was 19 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

- The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

- The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision [March 9, 2020] (20 CFR 404.1520(g)

1  and 416.920(g)).

2  (AR 17-27.)

3                                  **III.**

4                            **LEGAL STANDARD**

5        To qualify for disability insurance benefits under the Social Security Act, the claimant

6  must show that she is unable "to engage in any substantial gainful activity by reason of any

7  medically determinable physical or mental impairment which can be expected to result in death

8  or which has lasted or can be expected to last for a continuous period of not less than 12

9  months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step

10  sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §

11  404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

12  Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is

13  disabled are:

14  > Step one: Is the claimant presently engaged in substantial gainful activity? If so,
15  > the claimant is not disabled. If not, proceed to step two.

16  > Step two: Is the claimant's alleged impairment sufficiently severe to limit his or
     > her ability to work? If so, proceed to step three. If not, the claimant is not
17  > disabled.

18  > Step three: Does the claimant's impairment, or combination of impairments, meet
     > or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the
19  > claimant is disabled. If not, proceed to step four.

20  > Step four: Does the claimant possess the residual functional capacity ("RFC") to
     > perform his or her past relevant work? If so, the claimant is not disabled. If not,
21  > proceed to step five.

22  > Step five: Does the claimant's RFC, when considered with the claimant's age,
     > education, and work experience, allow him or her to adjust to other work that
     > exists in significant numbers in the national economy? If so, the claimant is not
23  > disabled. If not, the claimant is disabled.

24  Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

25        Congress has provided that an individual may obtain judicial review of any final decision

26  _____

27  [2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R.
     §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The
     regulations are generally the same for both types of benefits. Therefore, further references are to the disability
28  insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff submits that: (A) substantial evidence does not support the ALJ's rejection of a treating physician's medical source statement; (B) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptomology evidence; and (C) the ALJ's mental residual functional capacity finding is not supported by substantial evidence.

### A.    The ALJ's Evaluation of Dr. Guimaraes' Opinion

Plaintiff argues that Dr. Pedro Guimaraes' ("Dr. Guimaraes") mental residual functional capacity ("MRFC") questionnaire opinion of a disabling level of psychiatric limitations is well supported by the substantial treating evidence of record documenting extensive mood instability and hallucinations, despite compliance with multiple psychotropic anti-convulsant SSRI and

1  antipsychotic medications which caused significant side-effects, notably extreme fatigue.  (Br.

2  8.)  Plaintiff argues this is the only long term treating MRFC opinion of record, and that the ALJ

3  improperly rejected the opinion.  (Br. 7-8.)

4         1.     The 2017 Regulatory Framework for Weighing Medical Opinions

5        The Social Security Administration revised its regulations regarding the consideration of

6  medical evidence — applying those revisions to all claims filed after March 27, 2017.  See

7  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL

8  168819, *5844 (Jan. 18, 2017).  Plaintiff filed her claim on January 8, 2018  (AR 193-94, 195-

9  204; Br. 6); therefore, the revised regulations apply.  See 20 C.F.R. § 404.1520c.  Plaintiff

10  generally accepts that the analysis is subject to the new regulations, but maintains the Ninth

11  Circuit still requires at least specific and legitimate reasons for rejecting the contradicted

12  opinions of treating physicians.  (Br. 11-13.)  The Court finds the 2017 regulations supersede the

13  previous standards enunciated by the Ninth Circuit under previous regulatory standards.

14        Under the updated regulations, the agency "will not defer or give any specific evidentiary

15  weight, including controlling weight, to any medical opinion(s) or prior administrative medical

16  finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§

17  404.1520c(a), 416.920c(a).[3]  Thus, the new regulations require an ALJ to apply the same factors

18  to all medical sources when considering medical opinions, and no longer mandate particularized

19  procedures that the ALJ must follow in considering opinions from treating sources.  See 20

20  C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

21        "When a medical source provides one or more medical opinions or prior administrative

22  medical findings, [the ALJ] will consider those medical opinions or prior administrative medical

23  findings from that medical source together using" the following factors: (1) supportability; (2)

24  consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend

25  to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§

26

27    [3]  The regulations at 20 C.F.R. § 404.1501 et seq., reference the regulations which apply to disability insurance
benefits, and the regulations at 20 C.F.R. § 416.901 et seq. apply to supplemental security income, though the

28  regulations are generally the same for both types of benefits.

6

404.1520c(a)-(c)(1)-(5), 416.920c(a)-(c)(1)-(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Accordingly, the ALJ must explain in the decision how persuasive they find a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Additionally, the ALJ "may, but [is] not required to, explain how [they] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

The "treating source rule" allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use.  See 20 C.F.R. §§ 404.1520c, 416.920c; 82 FR 5844-01, 2017 WL 168819, at *5852–53 (eliminating "treating source rule").  In sum, the requirement that an ALJ provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion no longer applies, as this "measure of deference to a treating physician is no longer applicable

1  under the 2017 revised regulations." Jean T. v. Saul, No. 20CV1090-RBB, 2021 WL 2156179,

2  at *5 (S.D. Cal. May 27, 2021); see also, e.g., Jones v. Saul, No. 2:19-CV-01273 AC, 2021 WL

3  620475, at *7-10 (E.D. Cal. Feb. 17, 2021) (finding the new regulations valid and entitled to

4  Chevron deference, and because prior case law "is inconsistent with the new regulation, the court

5  concludes that the 2017 regulations effectively displace or override" it); Meza v. Kijakazi, No.

6  1:20-CV-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("courts in this circuit

7  have rejected the notion that the treating physician rule still pertains to claims filed after March

8  27, 2017").

9      Nonetheless, the new regulations still require the ALJ to explain his reasoning and to

10  specifically address how he considered the supportability and consistency of the opinion.  20

11  C.F.R. §§ 404.1520c, 416.920c; see P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at

12  *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,'

13  deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ

14  must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s]

15  all of the medical opinions.") (citation omitted).  As always, the ALJ's reasoning must be free of

16  legal error and supported by substantial evidence.  Indeed, the Court notes that, for example,

17  where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the

18  new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.

19  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (noting that inconsistency with

20  independent clinical findings in the record is a specific and legitimate reason to reject a

21  contradicted opinion of a treating physician).  Thus, even under the new regulatory framework,

22  the Court still must determine whether the ALJ adequately explained how he considered the

23  supportability and consistency factors relative to medical opinions and whether the reasons were

24  free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV

25  20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

26      2.    Dr. Guimaraes January 9, 2019 Opinion

27      The opinion in question is dated January 9, 2019.  (AR 539.)  The record is a

28  questionnaire with specific questions and subsets of types of limitations that the medical

1 professional is to opine as to the severity of each subset using a scale of severity from Category I

2 to Category IV.  According to the form, Category I does not preclude performance of any aspect

3 of the job; Category II precludes performance for 5% of an 8-hour workday (24 minutes);

4 Category III precludes performance for 10% of an 8-hour workday (48 minutes); and Category

5 IV precludes performance for 15% or more of an 8-hour workday (72 minutes).  (AR 537.)

6       The form indicates that Dr. Guimaraes saw Plaintiff 1 to 2 times per month since

7 September of 2016.  (AR 537.)  Plaintiff's diagnosis was PTSD and major depressive disorder.

8 (Id.)  Prescribed and non-prescription medications were listed as: Effexor XR; Lamictal; Lithium

9 Carbonate; Rexulti; and Wellbutrin XL.  (Id.)  The form lists Plaintiff's side effects of

10 prescription and non-prescription medications as: lethargy, palpitations, dizziness, and nausea.

11 (Id.)

12       The first subset of limitation areas pertains to mental abilities, understanding, and

13 memory.  (AR 537.)  Dr. Guimaraes checked the boxes for Category I for each of the areas: (1)

14 remember locations and work-like procedures; (2) understand and remember very short and

15 simple instructions; and (3) understand and remember detailed instructions.  (AR 537.)  This

16 means Plaintiff's work performance was not precluded by any limitations in this subset.  Where

17 asked to explain these responses, Dr. Guimaraes stated "patient is able to follow instructions."

18 (Id.)

19       The second subset pertains to mental abilities, sustained concentration, and memory.  Dr.

20 Guimaraes checked the boxes for Category I (no limitation) for each of the following areas: (4)

21 carry out very short and simple instructions; (5) carry out detailed instructions; (9) work in

22 coordination with or in proximity to others without being distracted by them; and (10) make

23 simple work-related decisions.  (AR 538.)  Dr. Guimaraes checked the boxes for Category IV for

24 each of the following areas: (6) maintain attention and concentration for extended periods of

25 time; (7) perform activities within a schedule, maintain regular attendance, and be punctual and

26 within customary tolerances; (8) sustain an ordinary routine without special supervision; and (11)

27 complete a normal workday and workweek without interruptions from psychologically based

28 symptoms, and perform at a consistent pace without an unreasonable number and length of rest

1   periods.  (Id.)  Category IV equates to precluding performance for 15% or more of the workday.
2   Where asked to explain these findings as to the second subset, Dr. Guimaraes left the form blank.
3   (Id.)

4        The third subset pertains to social interaction.  (AR 538.)  Dr. Guimaraes checked the
5   boxes for Category I (no limitation) for each of the following areas: (13) ask simple questions or
6   request assistance; and (16) maintain socially appropriate behavior, and to adhere to basic
7   standards of neatness and cleanliness.  (Id.)  Dr. Guimaraes checked the boxes for Category IV
8   (15% of workday) for each of the following areas: (12) interact appropriately with the general
9   public; (14) accept instructions and respond appropriately to critiques from supervisors; and (15)
10  get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
11  (Id.)  Where asked to explain these findings as to the third subset of social interaction, Dr.
12  Guimaraes left the form blank.  (Id.)

13       The fourth subset pertains to adaptation.  (AR 538.)  Dr. Guimaraes checked the box for
14  Category I (no limitation) for the area of: (18) be aware of normal hazards and take appropriate
15  precautions.  (Id.)  Dr. Guimaraes checked the boxes for Category IV (15% of workday) for each
16  of the following areas: (17) respond appropriately to changes in the work setting; (19) travel in
17  unfamiliar places or use public transportation; and (20) set realistic goals or make plans
18  independently of others.  (Id.)  Where asked to explain these findings as to the fourth subset of
19  adaptation, Dr. Guimaraes wrote: "Patient suffers from depression and anxiety that interferes
20  with social interactions."  (Id.)

21       Dr. Guimaraes opined that on average Plaintiff would be absent 5 or more days from
22  work.  (AR 539.)  Dr. Guimaraes also opined that on average Plaintiff would be unable to
23  complete an 8-hour workday 5 days a month.  (Id.)  Dr. Guimaraes opined that these limitations
24  began on December 16, 2019.  (Id.)  The form checked the box affirming that Plaintiff was not a
25  malingerer.  (Id.)

26       3.    The ALJ's Findings as to Dr. Guimaraes' Opinion

27       The   ALJ made the following findings and conclusions in finding the opinion not
28  persuasive:

1
2
3
4
5
6
7
8

> Dr. Guimaroes [sic], MD, opined that the claimant had symptoms preclude performance for 15% or more of an 8-hour workday in the areas of sustained concentration and memory, social interaction, and adaption. He also stated that the claimant is likely to be absent or unable to complete an 8-hour workday at least 5 or more days per month. In support, he merely stated that the claimant suffers from depression and anxiety that interferes with social interactions (8F). The undersigned finds this opinion to be not persuasive as his own treatment records as well as the observations by other treatment providers show overall normal mental status examinations (*see eg* 2F; 7F). This opinion is also inconsistent with the claimant's activities of daily living and her ability to work, including at substantial gainful activity levels (1F; 2F; 7F; 7D; 8D).

9   (AR 24.)

10        4.    Plaintiff's Primary Arguments

11        Plaintiff emphasizes Dr. Guimaraes has been treating her every one to two months since

12   2016. Plaintiff argues the opinion is well supported by substantial evidence including extensive

13   mood instability and hallucinations despite compliance with multiple psychotropic, anti-

14   convulsant SSRI and antipsychotic medications, which caused significant side-effects such as

15   extreme fatigue. (Br. 8.) Plaintiff submits that because the only long-term treating psychiatric

16   MSS MRFC is well-supported by Dr. Guimaraes' own treating records, the ALJ harmfully erred

17   by failing to properly consider and evaluate the opinion.

18        Plaintiff summarizes the longitudinal record arguing this demonstrates the supportability

19   of the opinion. Plaintiff highlights: a September 27, 2016 psychiatric report from Dr. Guimaraes

20   that documents Plaintiff sought treatment for medication management (AR 402), showing

21   Plaintiff was twice held involuntarily at a psychiatric hospital on 5150, most recently in July of

22   2013 when she punched her mother (AR 403); a July 30, 2017 emergency room department

23   record that documented Plaintiff sought treatment for trouble sleeping., a return of auditory

24   hallucinations described as mean and aggressive voices, and visual hallucinations of demons

25   (AR 338); a November 1, 2017 record from Mary Meiselman, Dr. Guimaraes' nurse practitioner

26   (AR 391-95); a December 13, 2017 treatment note from Dr. Guimaraes (AR 375); a March 14,

27   2018 treatment record where Plaintiff reported voices were coming back (AR 357, 361) and

28   worsening symptoms; a follow up treatment record from April 18, 2018, with Plaintiff still

1   hearing voices, but fainter (AR 352); a July 9, 2018 treatment note reporting weight gain and
2   sleeping too much, with a change in medications (AR 526-30); a September 4, 2018 treatment
3   record where Plaintiff reported an episode becoming very frustrated, tearful, and punching
4   pillows three weeks prior, and hearing chatter in her head (AR 514); an October 2, 2018 record
5   showing Plaintiff struggled with excessive sedation since medication change, and sleepiness
6   throughout day with Dr. Guimaraes diagnosing schizoaffective disorder, bipolar type, and PTSD
7   (AR 505); a treatment record dated January 16, 2019, with Plaintiff complaining of being too
8   sedated, and changed medication (AR 486-489); a treatment record dated March 27, 2019,
9   documenting Plaintiff pill-rolling (a tremor related to Parkinson's disease), with a change in
10  medication (AR 469, 477); a May 1, 2019 record where Plaintiff reported occasional tearfulness
11  and hand tremors; a September 11, 2019 record, where Plaintiff endorsed auditory
12  hallucinations, had a full and blunted affect and Dr. Guimaraes changed medication again (AR
13  508-509, 512); an October 28, 2019 record, where Plaintiff reported being more anxious and
14  having problems falling asleep; and a December 16, 2019 record where Plaintiff reported feeling
15  increased hopeless, depressed, screaming and crying every few days, was disheveled, and again
16  changed medication (AR 426-430).

17      Plaintiff contends the ALJ erroneously mischaracterized her mental status examinations
18  as normal, and failed to discuss that on multiple occasions, Dr. Guimaraes or his nurse
19  practitioner, documented Plaintiff's mental status exam to show: "flat," "blunted" (AR 376, 509),
20  and "restricted" affect (AR 503); "slowed speech" (AR 503); "drowsy" appearance (AR 392;
21  464); hand tremors (AR 464, 469); "disheveled" appearance; and "sad" and "depressed" mood
22  (AR 426). See Wood v. Colvin, No. ED CV 16-534-E, 2016 WL 5496267 (Sept. 28, 2016,
23  C.D. Cal.) (finding that an ALJ's material mischaracterization of mental status examinations as
24  "otherwise normal" when there was evidence of "other abnormalities" did not constitute
25  substantial evidence to support an ALJ's RFC determination as "an ALJ's material
26  mischaracterization of the record can warrant remand."). Plaintiff further argues the ALJ erred
27  in failing to discuss the treating records in Exhibit 2F and Exhibit 7F in context with the
28  objective treating evidence and subjective testimony of record, as a whole. See Ghanim v.

1   <u>Colvin</u>, 763 F.3d 1154 (9th Cir. 2014) (holding that "the ALJ improperly cherry-picked"

2   characterizations by the physician out of context "instead of considering these factors in the

3   context of [the doctor's] diagnoses and observations of impairment").   Plaintiff highlights the

4   Ninth Circuit has held a psychologist's partial reliance on a claimant's self-reported symptoms

5   was not a valid reason to reject the psychologist's opinion.   <u>See</u> <u>Buck v. Berryhill</u>, 869 F.3d

6   1040, 1049 (9th Cir. 2017) (holding that "Psychiatric evaluations may appear subjective,

7   especially compared to evaluation in other medical fields[] [and] [d]iagnoses will always depend

8   in part on the patient's self-report, as well as on the clinician's observations of the patient[,] [b]ut

9   such is the nature of psychiatry.").[4]

10      Plaintiff argues the ALJ erred by failing to discuss Plaintiff's symptomology as

11   documented by Dr. Guimaraes in these treating records, including: "simmering irritability,"

12   "short fuse," (AR 375); unexpected "tearfulness" or crying (AR 357, 426, 463, 503); "mood

13   instability at times," "daytime anxiety and worry," becoming "easily overwhelmed," "some

14   possible hypnogogic hallucinations at the onset of sleep," "chatter" or "voices" increasing at

15   night (AR 352, 375, 402, 352, 508, 514); lack of motivation, "anhedonia," or feeling no

16   pleasures in life (AR 402-403, 426, 503); excessive sedation (AR 426, 438, 486-487, 503, 526);

17   interrupted sleep patterns (AR 437, 438); increased anxiety (AR 437); screaming outbursts (AR

18   426, 514); feeling depressed (AR 402-403, 426); and disturbing thoughts (AR 426).

19      Plaintiff emphasizes that in response to this extensively reported and documented

20   symptomology during these office visits, coupled with MSE findings, the record establishes that

21   Dr. Guimaraes used his professional judgment to prescribe varying, potent SSRI, anti-psychotic,

22   anti-convulsant, and psychotropic medications, in varying dosages due to significant side-effects.

23   Plaintiff argues this supports the opinion, and shows non-conservative treatment.   <u>See, e.g.</u>,

24   <u>Baker v. Astrue</u>, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010)

25

---

26   [4]  Also noted in <u>Buck</u>, a "physician's opinion of disability premised to a large extent upon the claimant's own
accounts of his symptoms and limitations may be disregarded where those complaints have been properly

27   discounted," and that where the doctor "conducted a clinical interview and a mental status evaluation," these were
"objective measures and cannot be discounted as a 'self-report.' " 869 F.3d at 1049 (citations and quotation marks

28   omitted).

1   ("Where mental activity is involved, administering medications that can alter behavior shows

2   anything but conservative treatment").  Plaintiff further submits the ALJ erred in discounting Dr.

3   Guimaraes' opinion by mischaracterizing Plaintiff's activities of daily living.  (Br. 17.)

4       5.       <u>The Court finds the ALJ did not Err in Weighing the Opinion of Dr. Guimaraes</u>

5   As summarized above and as Defendant notes, although the questionnaire asked, Dr.

6   Guimaraes did not explain why he opined that Plaintiff would be precluded from performing the

7   following mental tasks 15% or more of an 8-hour workday: maintain attention and concentration

8   for extended period of time; perform activities within a schedule, maintain regular attendance,

9   and be punctual and with within customary tolerances; sustain an ordinary routine without

10  special supervision; complete a normal workday and workweek without interruptions from

11  psychologically based symptoms, and perform at a consistent pace without an unreasonable

12  number and length of rest periods; respond appropriately to changes in a work setting; travel in

13  unfamiliar places or use public transportation; and set realistic goals or make plans

14  independently from others (AR 24, 537-38).  Defendant argues this shows the ALJ properly

15  found Dr. Guimaraes's January 2019 opinion was unpersuasive.

16  The fact a physician uses a check box form without providing concurrent explanation

17  does not equate to the opinion being unsupported by substantial evidence, and an ALJ may not

18  reject an opinion solely for being in such form.  See <u>Garrison v. Colvin</u>, 759 F.3d 995, 1013 (9th

19  Cir. 2014) (finding ALJ "failed to recognize that the opinions expressed in check-box form in the

20  February 2008 PFC Questionnaire were based on significant experience with Garrison and

21  supported by numerous records, and were therefore entitled to weight that an otherwise

22  unsupported and unexplained check-box form would not merit."); <u>Esparza v. Colvin</u>, 631 F.

23  App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in

24  the form of check-box questionnaires, that is not a proper basis for rejecting an opinion

25  supported by treatment notes . . . [t]he treating physician's extensive notes are consistent with

26  the check-box forms and provide the basis for his opinions.").  Clear however, is that an ALJ

27  may discount an unexplained check box form opinion that is unsupported or inconsistent with the

28  treatment records from that medical provider.  See <u>id.</u>; <u>Flowers v. Colvin</u>, No. 3:16-CV-05025

JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016) ("As an initial matter, discrediting a doctor's opinion simply because he used a check box form is not valid unless that opinion is inconsistent with the underlying clinical records . . . to the extent that the ALJ discounted Dr. Trowbridge's opinion simply because the opinion was contained on a check box form, the ALJ committed legal error.").

The Court presumes that even after the 2017 regulations, an ALJ cannot simply reject a physicians' opinion simply for being in such form, when the opinion is in fact supported by the treatment record.  Here, the ALJ stated in relation to the form: "[i]n support, he merely stated that the claimant suffers from depression and anxiety that interferes with social interactions." (AR 24, 538.)  The ALJ joined this observation with the finding that Dr. Guimaraes' "own treatment records as well as the observations by other treatment providers show overall normal mental status examinations," and found the "opinion [] also inconsistent with the claimant's activities of daily living and her ability to work, including at substantial gainful activity levels." (AR 24.)

The "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The Court finds substantial evidence supports the ALJ's finding that Dr. Guimaraes' opinion was: (1) not persuasive because Dr. Guimaraes' own treatment records and records from other treatment providers showed overall normal mental status examinations; and (2) inconsistent with Plaintiff's activities of daily living and her ability to work, including work at a level of substantial gainful activity levels.

/ / /

/ / /

The ALJ noted normal exam findings earlier in the opinion, when explaining the longitudinal evolution of the Plaintiff's medical treatment:

> The records indicate that the claimant has mental health diagnoses including bipolar affective disorder, bipolar I disorder, unspecified schizophrenia spectrum and other psychotic disorder, and post-traumatic stress disorder (PTSD) (1F; 2F). She has reported symptoms including auditory and visual hallucinations, anger, bad dreams, disturbing thoughts, irritability, tearfulness, mood instability, and anxiety and worry (*see eg* 1F; 2F; 7F). In July of 2017, the claimant reported that she had been off her medications because she threw them away (1F). In October of 2017, the records state that she was responding to treatment and showing signs of improvement (2F/48). In August of 2018, she reported that she was stable and happy and found her medications effective (7F/96, 99). Again, in January of 2019, she also stated that she was stable, happy, and had significant improvement to her symptoms (7F/56-60, 33). The records suggest that her impairments are well controlled on current medications (7F/56-60, 29). The claimant admitted that she had previously been variably compliant with her medication (7F/33).
>
> During examinations, the claimant has been observed to be oriented, in no distress, to have normal speech, normal behavior, normal judgment and thought content, to not be anxious, angry, inappropriate, paranoid or have delusions, to have normal cognition and memory, to not have a depressed mood, to be calm and attentive, appropriately dressed with adequate grooming and hygiene, to be cooperative with good eye contact, bright, engaging, to have intact recent and remote memory, and intact attention and concentration (*see eg* 1F; 2F; 7F). At times she was observed to have a slightly depressed mood or to be irritable (1F; 2F).

(AR 22-23.)

The ALJ noted a pattern of improvement with medication when she was compliant. (AR 22-23.) The ALJ noted that in July of 2017, Plaintiff reported she had been taken off medications because she threw them away. (AR 22.) This is the emergency room record dated July 30, 2017. (AR 337.) The record reflects the following:

> 23 y/o female w/ trouble sleeping past few days. She states she weened off her meds in Feb. She started working at casino at that time. Last time seen by her doctors was in Feb as well. She did not run out of meds, she threw them away. Since then, she has had in recent weeks return of auditory hallucinations which are mean and aggressive voices (not now), the visual hallucinations are "demons", but not now, "they are far off". No SI/HI. Last street drugs was 2 yrs ago. EtOH heavy in youth, not as much now. Onset of her psych issues were in her teens. She took a bad hit of "molly", but also possibly some "bath salts" Since then she has not been well.

1  (AR 338.)  The psychiatric exam noted: normal speech; normal behavior; normal judgment and

2  thought content; mood appeared not anxious; affect was not angry, not blunt, not labile, and not

3  inappropriate; thought content was not paranoid and not delusional; cognition and memory were

4  normal; she did not exhibit a depressed mood; expressed no homicidal or suicidal ideation; and

5  expressed no suicidal or homicidal plans.  (AR 339.)

6       The ALJ noted that in October of 2017, records showed Plaintiff was responding to

7  treatment and showing signs of improvement.  (AR 22-23.)  This refers to an October 11, 2017

8  record where Dr. Guimaraes, with N.P. Meiselman, noted Plaintiff was "responding to current

9  treatment and is showing signs of improvement."  (AR 399.)

10      The ALJ noted that in January of 2019, Plaintiff stated she was stable, happy, and had

11  significant improvement to her symptoms (AR 23, citing AR 457, 480-84); that records

12  suggested her impairments were well controlled on current medications (AR 23, citing AR 453,

13  480-84); and that Plaintiff had admitted that she had previously been variably compliant with her

14  medication (AR 23, citing AR 457).  This references a January 30, 2019 record, signed by N.P.

15  Bayer "with" Dr. Guimaraes, three weeks after the January 9 opinion.  (AR 480-84.)  Under

16  chief complaint, Plaintiff reported "I am feeling good.  I think the sleep helps."  (AR 480.)  The

17  record reflects that Plaintiff "states that she is following through with recommendations for sleep

18  hygiene and she notices a significant improvement in her auditory hallucinations with the stable

19  sleep.  Mood is euthymic and she feels good energy with the Wellbutrin . . . She presents as

20  bright and interactive."  (AR 480-481.)  This record also incorporates a summary of a visit

21  referenced as "From 1/19 PN."  (AR 481.)  This appears to reference a January 16, 2019 record,

22  one week after the January 9 opinion.  (See AR 486.)  The summary of the earlier January 16

23  record states that she had previously reported "stable mood without tearfulness or irritability,"

24  that "[o]verall she is happy with her medications and her progress," "admits that she was erratic

25  and yelling and experiencing significant auditory hallucinations as recently as last year," that she

26  was "variably compliant with medications," and "she is motivated to have stability and has been

27  doing very well for the past 9 months but today feels frustrated because she did not get

28  authorization for Rexulti and she missed two doses."  (AR 481.)

1    This also references a June 4, 2019 treatment record with N.P. Bayer "with" Dr.

2    Guimaraes, that again incorporates the same summary of the January 16, 2022 record, and its

3    reference to being variably compliant.  (AR 457, 461.)   On June 4, 2019, Plaintiff's chief

4    complaint was entered as "I'm still doing really good."  (AR 456.)   Doctor Guimaraes noted

5    Plaintiff "continues to do well . . . has tolerated discontinuation of Depakote and now reports

6    positive outcome with decreasing her lithium, mood remains stable and tremors have abated,"

7    that she denies thoughts of self-harm; that she sleeps well and "uses just one 25 mg Seroquel";

8    appetite stable; losing weight at a healthy rate; denies hallucinations; and "has no pill rolling."

9    (AR 457.)   Dr. Guimaraes also noted "[o]verall she is bright and engaging and feeling very

10    happy with her improvements . . . is social and without anxiety . . . will follow up in 6 weeks."

11    (AR 457.)

12    The third record cited by the ALJ at this portion of the opinion is a July 23, 2019 record

13    signed by NP Bayer "with" Dr. Guimaraes.  (AR 453.)   The ALJ cited it for the proposition that

14    Plaintiff's impairments were well controlled on medication.  (AR 23.)   The records reflects the

15    notation that: Plaintiff "is stable and well controlled on current medications . . . [d]oing well with

16    Seroquel at HS to stabilize sleep."  (AR 453.)

17    The ALJ also found that: "[d]uring examinations, the claimant has been observed to be

18    oriented, in no distress, to have normal speech, normal behavior, normal judgment and thought

19    content, to not be anxious, angry, inappropriate, paranoid or have delusions, to have normal

20    cognition and memory, to not have a depressed mood, to be calm and attentive, appropriately

21    dressed with adequate grooming and hygiene, to be cooperative with good eye contact, bright,

22    engaging, to have intact recent and remote memory, and intact attention and concentration.  (AR

23    23, citing AR 337-351, 352-412, 425-536).   The ALJ in conjunction again noted that at times

24    Plaintiff was observed to have a slightly depressed mood or to be irritable.  (AR 23, citing AR

25    337-351, 352-412.)

26    As noted above, Plaintiff cites to numerous records that she claims demonstrates the ALJ

27    ignored records or engaged in cherry-picking of records showing improvement or normal mental

28    status examinations.  The Court does not find the ALJ engaged in cherry-picking of evidence,

but rather weighed numerous records of Plaintiff's various complaints through the relevant time period. The ALJ acknowledged Plaintiff's reporting of symptoms including auditory and visual hallucinations, anger, bad dreams, disturbing thoughts, irritability, tearfulness, mood instability, anxiety, and worry. (AR 22, citing AR 337-351, 352-412, 425-536.) However, the records cited by the ALJ provide substantial support for the f.

In addition to the above records specifically cited by the ALJ that the Court finds highly supportive of the ALJ's findings, Defendant also highlights records of additional support in records cited by the ALJ. Defendant argues the ALJ properly noted Dr. Guimaraes's own treatment notes and observations of the other treatment providers in Dr. Guimaraes's office did not support Dr. Guimaraes's January 2019 opinion (AR 20-24, 396, 399, 402, 406). Defendant directs the Court to records demonstrating that Mary Meiselman, N.P.; K. Elmquist, R.N.; Korie Bayer, N.P.; Joe Feliberti, M.D.; and Rachel Frye, R.N., consistently observed cooperative behavior, good eye contact, normal speech, as well as intact insight, judgment, memory, and attention/concentration, (AR 20-24, 353, 357-58, 364, 370, 376, 382, 387, 392, 425-27, 433, 437-38, 445-96, 503-04, 509-35). The Court finds this provides substantial evidence in support of the ALJ's finding that these examination findings by Dr. Guimarae's and associates do not support Dr. Guimaraes's opinion that Plaintiff would be precluded from performing mental tasks 15% or more of an 8-hour workday. Plaintiff does not directly dispute this evidentiary support, but in reply generally argues that the Defendant cannot use post-hoc arguments and records not cited by the ALJ. However, these records were cited by the ALJ, somewhat generally but not lacking in support throughout the broad swath, and Plaintiff mounts no more than a generalized statement in reply that does not specifically address the Defendant's arguments.

Plaintiff proffers Dr. Guimaraes prescribed a varying and intensive course of non-conservative treatment, and this is further indication that his disabling MRFC MSS is well-supported by the evidence of record. (Br. 17.) Plaintiff emphasizes treatment of psychological conditions with SSRIs and other "mild altering" medications are not considered "conservative treatments" by many courts. See, e.g., Baker, 2010 WL 682263, at *1.

The Court is not unreceptive to finding an ALJ's characterization of treatment as

1    conservative to be error.  See Garcia v. Comm'r of Soc. Sec., No. 1:21-CV-00068-SAB, 2022

2    WL 2110709, at *7 (E.D. Cal. June 10, 2022) ("Other than stating the medications were routine

3    and conservative, and infrequently changed, the ALJ does not specifically mention any

4    information about the treatment by medication that would support the finding of the treatment

5    being routine and conservative.  Given the various issues surrounding mental health treatment

6    and the Plaintiff's record of mental health treatment and medications, the Court does not find the

7    ALJ's findings and conclusions in this instance to be a clear and convincing reason supported by

8    substantial evidence in the record.").  Here however, the ALJ did not describe the mental health

9    treatment as conservative.  Rather the ALJ accurately noted that "the records indicated that the

10   claimant and her treatment providers have reported improvement to her symptoms with

11   medication compliance."  (AR 24, citing AR 352-412, 425-536.)  The ALJ noted that at the

12   hearing, Plaintiff "testified that her crying spells and outburst seem to be getting better with

13   medication."  (AR 24.)  As discussed above, the ALJ accurately relied upon records regarding

14   Plaintiff being stable, symptoms being well-controlled on medications, and that Plaintiff was

15   variably compliant with medications at other times.  (AR 23-24, 453, 457, 461, 481.)  The Court

16   finds the ALJ's reliance on the stability of treatment as part of the conclusions is not error, and is

17   supported by substantial evidence in the record.  Warre v. Comm'r of Soc. Sec. Admin., 439

18   F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication

19   are not disabling for the purpose of determining eligibility for SSI benefits.").

20       Plaintiff further submits the ALJ erred in discounting Dr. Guimaraes' opinion by

21   mischaracterizing Plaintiff's activities of daily living.  (Br. 17.)  Plaintiff contends her attempts

22   at work activity, as shown by hearing testimony, were only attempts.  That is, she was unable to

23   sustain any full-time work for any sustained period of time due to interruptions from her

24   psychiatric impairments, including uncontrolled screaming and crying outbursts and the side-

25   effects of her medication, despite compliance, including excessive fatigue and slowed

26   performance of tasks.  (Id.)  Plaintiff directs the Court to various statements made at the hearing.

27   For example, Plaintiff testified she was fired from her job in 2017 for "not getting along with

28   another co-worker, and I had been off my medication.  So, I had a mental breakdown, and I was

1   hospitalized and then put back on my medication.  So I've been on my medication consistently,

2   every day for over two, two and a half years." (AR 39.)  Plaintiff also emphasizes testimony that

3   she was not able to perform full time work because she was "getting extremely tired throughout

4   the day.  I wasn't able to perform as well.  So I, you know…I have gotten complaints before.

5   But I would get to the point where, you know…I've had the problem of like, trying not to fall

6   asleep while at work.  And then there's other times where I can be more hyper and high energy."

7   (AR 41.)  Plaintiff also directs the Court to testimony where Plaintiff stated that "even when I

8   don't take things personally, I have no control over it.  But I will physically start crying, and

9   people, customers see me that way.  I've been cashiering before, and I've been crying and not

10  able to stop.  I've had to walk off the floor plenty of times in multiple jobs because I can't

11  control it; I have a breakdown basically.  And I have some mood swings and some anger – when

12  things don't – it can be simple things that I lose my temper… and sometimes, I can appear to be

13  antisocial because I'm not engaging with customers as much as you should probably…And then

14  also, just excessive, either going through a state of delusions and tiredness – and then a lot of

15  times, the anger will get to the point where I feel like, just like screaming and I don't know how

16  to control it."  (Br. 17-18, citing AR 44.)

17      The ALJ stated Dr. Guimaraes' opinion was "inconsistent with the claimant's activities

18  of daily living and her ability to work, including at substantial gainful activity levels."  (AR 24,

19  citing AR 212-213, 214, 337-351, 352-412, 425-536.)  Earlier in the opinion, the ALJ made the

20  following findings when analyzing Plaintiff's symptom statements:

> Some of the claimant's activities of daily living are also
> inconsistent with their allegations that they are completely
> disabled. For example, the claimant has reported enjoying hobbies
> including reading, dancing, going to Zumba, walking, using
> pinterest, photography, taking classes, and volunteering [AR 337-
> 351, 352-412]. She reported working and going to school during
> the relevant time period [AR 337-351, 352-412]. The earnings
> records indicate that she was able to work after her alleged onset
> date including at substantial gainful activity levels [AR 210-214;
> 220-221]. She even reported working two jobs and teaching yoga
> classes as recently as December of 2019 [AR 426]. She went on
> vacation with her brother in 2018 [AR 520] and went to Paris with
> her dad in 2019 [AR 444]. The claimant has been engaged for 3
> weeks and met her fiancé 6 months ago at a karaoke bar (hearing
> testimony).  She is social with family, friends, and coworkers

1
2
3
4

(hearing testimony).  Furthermore, the claimant testified that she most recently stopped working because she got a different job (hearing testimony). She is now working at detox center and not having any trouble (hearing testimony).  The claimant's ability to work, teach, take classes, socialize, date, and go on vacations including traveling out of the country is inconsistent with her allegations regarding the limiting effects of her impairments.

5  (AR 23-24.)  Of note within the records cited by the ALJ, on January 16, 2019, one week after

6  Dr. Guimaraes completed the questionnaire, Plaintiff reported she was "overall" "happy with her

7  medications and progress," and she was working as a massage therapist.  (AR 24, 486-87).  The

8  ALJ accurately noted Plaintiff reported working two jobs and "sometimes" teaching yoga classes

9  in December 2019.  (AR 21, 24, 426).  The Court finds the ALJ reasonably found testimony that

10  she was engaged, met her fiancé at a karaoke bar, and socialized with family, sober friends, and

11  coworkers as inconsistent with Dr. Guimaraes's opinion that depression and anxiety interfered

12  with Plaintiff's social interactions 15% or more of an 8-hour workday.  (AR 21, 24, 38, 50-53,

13  538).  The Court also finds the ALJ reasonably found Plaintiff's reports of traveling with her

14  brother in 2018 and traveling to Paris with her dad in 2019 to be inconsistent with Dr.

15  Guimaraes's opinion, particularly his opinion regarding Plaintiff's ability to travel in unfamiliar

16  places.  (AR 23, 444, 520, 538.)

17       The Court finds substantial evidence supports the ALJ's evaluation of Dr. Guimaraes'

18  January 2019 opinion, and the ALJ's findings and conclusions comply with the controlling

19  regulations and are free from remandable legal error.   20 C.F.R. §§ 404.1520c(a)-(c),

20  416.920c(a)-(c).

21       **B.      Whether the ALJ Failed to Provide Clear and Convincing Reasons to**
          **Discount Plaintiff's Symptom Testimony**
22

23       Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting

24  her symptom testimony.  (Br. 20-26.)

25       1.      The Clear and Convincing Standard for Evaluating Symptom Testimony[5]

26       "An ALJ is not required to believe every allegation of disabling pain or other non-

27  ─────────────────────
    [5]  Although Defendant emphasizes disagreement with the standard in order to preserve the issue for future appeals,
28  Defendant acknowledges the clear and convincing standard is the applicable standard for weighing credibility in the
    Ninth Circuit.  (Opp'n 28 n.11.)

1   exertional impairment." <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

2   and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or

3   symptoms is credible requires the ALJ to engage in a two-step analysis.  <u>Molina v. Astrue</u>, 674

4   F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented

5   objective medical evidence of an underlying impairment which could reasonably be expected to

6   produce the pain or other symptoms alleged." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th

7   Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to

8   show that her impairment could be expected to cause the severity of the symptoms that are

9   alleged, but only that it reasonably could have caused some degree of symptoms.  <u>Smolen</u>, 80

10  F.3d at 1282.

11      Second, if the first test is met and there is no evidence of malingering, the ALJ can only

12  reject the claimant's testimony regarding the severity of her symptoms by offering "clear and

13  convincing reasons" for the adverse credibility finding.  <u>Carmickle v. Commissioner of Social</u>

14  <u>Security</u>, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must make findings that support this

15  conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude

16  the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

17  the claimant's testimony.  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004).

18      Factors that may be considered in assessing a claimant's subjective pain and symptom

19  testimony include the claimant's daily activities; the location, duration, intensity and frequency

20  of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

21  effectiveness or side effects of any medication; other measures or treatment used for relief;

22  functional restrictions; and other relevant factors.  <u>Lingenfelter</u>, 504 F.3d at 1040; <u>Thomas</u>, 278

23  F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary

24  techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

25  statements concerning the symptoms, and other testimony by the claimant that appears less than

26  candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

27  prescribed course of treatment." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008)

28  (quoting <u>Smolen</u>, 80 F.3d at 1284).

1        2.      Plaintiff's Primary Challenges

2        Plaintiff argues the ALJ mischaracterized the medical evidence of record that shows

3   greater limitations, by failing to consider the "subjective and subjective evidence as a whole."

4   (Br. 20.)  The Court presumes the Plaintiff means objective and subjective evidence.  Plaintiff

5   highlights that, as argued previously, the ALJ mischaracterized Plaintiff's mental health

6   examinations as overall normal, while failing to discuss that on multiple occasions Dr.

7   Guimaraes or his nurse practitioner, documented Plaintiff's MSE showed "flat blunted" (AR

8   376, 509) and "restricted" affect (AR 503); "slowed speech" (AR 503), "drowsy" appearance

9   (AR 392, 464) with hand tremors (AR 464, 469); "disheveled" appearance; and "sad" and

10  "depressed" mood. (AR 426).  (Br. 22.)  Plaintiff further argues that the ALJ failed to discuss

11  Plaintiff's limiting symptomology as extensively documented by Dr. Guimaraes, coupled with

12  his prescription of various medications and dosages of highly potent and side-effect inducing

13  anti-psychotic, psychotropic, anti-convulsant and SSRI medications.

14       Plaintiff's second overall argument is that the ALJ materially mischaracterized her

15  activities of daily living as indicating a greater level of functioning than actually reported.

16  Plaintiff proffers the ALJ's reference to enjoying hobbies, including reading, dancing, going to

17  Zumba, walking, using Pinterest, photography, taking classes, and volunteering, is incorrect as

18  nowhere does hearing testimony indicate that the activities took place on a *daily* basis.  (Br. 22.)

19  Plaintiff also takes issue with the fact the ALJ did not use more pointed citations to the record

20  when referencing Exhibits 2F and 7F, which constitute 173 pages of records, and thus this is not

21  clear and convincing.  (Br. 22-23.)

22       Additionally, Plaintiff argues that a review of the medical records and hearing testimony

23  as a whole does indeed show she consistently reported that she has experienced periods of

24  improvement and periods of part time temporary employment, but such improvement in

25  symptoms did not rise to the level required of a person who can engage in sustained work five

26  days a week for eight hours a day in a normal work environment.  (Br. 23.)  Plaintiff directs the

27  Court to hearing testimony, such as where Plaintiff testified that: "I don't think that I'm able to

28  function like other normal people who don't have the same problems and issues.  And, you

know, like hearing voices and seeing things, those are abnormal, and they affect my daily life to where I need to have some time to cope with those things that go, that I go through, rather, because the performance – with the ideal compared to someone that might work full-time and be able to function better."  (AR 49.)

Relatedly, Plaintiff argues that the cited improvement on medications is inconsistent and conditional on the consistent monitoring by her treating psychiatrist, who prescribed various medications, and the ALJ's reliance on improvement and stability on medication was error.  See, e.g., Garrison, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

3.   The Court Finds the ALJ Provided Multiple Clear and Convincing Reasons

While records and similar reasoning were discussed elsewhere in the opinion, the ALJ's reasoning for discounting Plaintiff's symptom testimony is as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the overall evidence of record. The claimant's allegations that they are completely disabled and unable to work any job due to the severity and limiting effects of their symptoms are inconsistent with the observations by the claimant's medical providers. Greater residual functional capacity limitations are not supported by the evidence that the claimant has been observed to be oriented, in no distress, to have normal speech, normal behavior, normal judgment and thought content, to not be anxious, angry, inappropriate, paranoid or have delusions, to have normal cognition and memory, to not have a depressed mood, to be calm and attentive, appropriately dressed with adequate grooming and hygiene, to be cooperative with good eye contact, bright, engaging, to have intact recent and remote memory, and intact attention and concentration. These observed functional abilities are inconsistent with the claimant's allegations regarding the severity and limiting effects of their impairments. Some of the claimant's activities of daily living are also inconsistent with their allegations that they are completely disabled. For example, the claimant has reported enjoying hobbies including reading, dancing, going to Zumba, walking, using pinterest, photography, taking classes, and volunteering [AR 337-351, 352-412]. She reported working and going to school during the relevant time period [AR 337-351, 352-412]. The earnings records indicate that she was able to work after her alleged onset date including at substantial gainful activity levels [AR 210-214; 220-221]. She even reported working two jobs and teaching yoga

classes as recently as December of 2019 [AR 426]. She went on vacation with her brother in 2018 [AR 520] and went to Paris with her dad in 2019 [AR 444]. The claimant has been engaged for 3 weeks and met her fiancé 6 months ago at a karaoke bar (hearing testimony).  She is social with family, friends, and coworkers (hearing testimony).  Furthermore, the claimant testified that she most recently stopped working because she got a different job (hearing testimony). She is now working at detox center and not having any trouble (hearing testimony).  The claimant's ability to work, teach, take classes, socialize, date, and go on vacations including traveling out of the country is inconsistent with her allegations regarding the limiting effects of her impairments.

(AR 23-24.)

The ALJ assessed work restrictions in finding that Plaintiff retained the ability for no greater than occasional contact with others and sustaining concentration, persistence, and pace for 2 hour intervals after which she requires a 10 minute break. (AR 22-23.)  As the Court discussed above, the ALJ acknowledged Plaintiff's reporting of symptoms including auditory and visual hallucinations, anger, bad dreams, disturbing thoughts, irritability, tearfulness, mood instability, anxiety, and worry.  (AR 22, citing 337-351, 352-412, 425-536.)  The ALJ stated that the "limitation that the claimant can sustain concentration, persistence, and pace for 2 hour intervals after which she requires a 10-minute break is supported by . . . some of her subjective symptoms, including auditory and visual hallucinations."  (AR 23.)  The ALJ explained that "some of her subjective symptoms including tearfulness, anger, irritability, and reported difficulty interacting with others" supported the RFC limitation regarding occasional interaction with coworkers, supervisors, and the public.  (AR 23.)

Defendant argues the ALJ properly evaluated under the regulations whether Plaintiff's statements about her symptoms were consistent with: (1) the objective medical evidence; and (2) the other evidence in the record (AR 22-24).  20 C.F.R. §§ 404.1529(c)(2-3), 416.929(c)(2-3).  Defendant argues the ALJ properly found Plaintiff's statements were inconsistent with: (1) the objective medical evidence; (2) her treatment history documenting improvement with medication compliance; (3) notations that Plaintiff's schizoaffective disorder (bipolar type) and PTSD were well controlled on medication; and (4) Plaintiff's activities.  (Opp'n 28-29.)

The Court finds the ALJ reasonably declined to find the record supported the full extent

1   of Plaintiff's subjective testimony, and provided clear and convincing reasons for doing so,

2   supported by substantial evidence in the record.

3       **a.      The Objective Medical Record**

4       As discussed above, the Court finds the ALJ carefully examined the longitudinal record

5   and detailed the clinical findings that supported the conclusions regarding inconsistency with the

6   record.  (AR 20-24).  The ALJ discussed the July 2017 psychiatric examination, which showed

7   Plaintiff was calm and attentive with normal speech, memory, cognition, behavior, judgment,

8   and thought content (not paranoid and not delusional).  (AR 21, 23, 339.)   The ALJ considered

9   that the emergency room physician described Plaintiff's mood as "not anxious" (AR 22-23, 339).

10  The ALJ discussed that records showed Plaintiff's exams consistently noted cooperative

11  behavior, good eye contact, normal speech, and intact insight, judgment, memory, and

12  attention/concentration (AR 20-24, 353, 357-58, 364, 370, 376, 382, 387, 392, 425-27, 433, 437-

13  38, 445-96, 503-04, 509-35).   The ALJ also discussed that Nurse Practitioner Bayer noted in

14  2019 that Plaintiff "presents as bright and interactive" and "bright and engaging."  (AR 20-21,

15  23, 457, 463, 480-81.)

16      The ALJ's specific use of the objective medical records to contrast the inconsistency with

17  the Plaintiff's testimony, was proper, reasonable, and supported by substantial evidence.  Burch,

18  400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the

19  ALJ's conclusion that must be upheld."); Smolen, 80 F.3d at 1279; Thomas, 278 F.3d at 955.

20  While the ALJ's use of the objective medical evidence is insufficient standing alone, the ALJ

21  provided clear and convincing determinations when considered in conjunction with the ALJ's

22  other reasoning concerning daily activities, and compliance with treatment in conjunction with

23  improvement with treatment, as discussed in the following sections.  See Rollins v. Massanari,

24  261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the

25  sole ground that it is not fully corroborated by objective medical evidence, the medical evidence

26  is still a relevant factor in determining the severity of the claimant's pain and its disabling effects

27  . . . The ALJ also pointed out ways in which Rollins' claim to have totally disabling pain was

28  undermined by her own testimony about her daily activities.") (citing 20 C.F.R. §

404.1529(c)(2)); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); <u>Burch</u>, 400 F.3d at 680-81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); 20 C.F.R. § 404.1529 ("We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); <u>Walker v. Barnhart</u>, 148 F. App'x 632, 633–34 (9th Cir. 2005) ("The ALJ's identification of discrepancies between Walker's alleged symptoms and the objective medical evidence including treatment records, the x-ray, and the observations of other medical personnel also provided legitimate reasons for rejecting Walker's testimony."); <u>Reichley v. Berryhill</u>, 723 F. App'x 540, (Mem)–541 (9th Cir. 2018) ("The ALJ provided the requisite specific, clear, and convincing reasons . . . [including] sufficiently [identifying] inconsistencies between Reichley's testimony and the objective medical evidence.").[6]

### b.    Daily Activities

The ALJ may consider the claimant's daily activities in making a credibility determination.  <u>See Diedrich v. Berryhill</u>, 874 F.3d 634, 642-43 (9th Cir. 2017); <u>Thomas</u>, 278 F.3d at 958-59; 20 C.F.R. § 404.1529(c)(3)(i) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms . . . Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities."). However, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled."  <u>Vertigan</u>, 260 F.3d at 1050 (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).  In fact, "many home

---

[6]  While inconsistency with or a lack of objective medical evidence can blur with a finding of contradiction, courts hold contradiction can be a sufficient basis for rejecting testimony.  <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995)); <u>Hamm v. Saul</u>, 804 F. App'x 810, 811–12 (9th Cir. 2020) ("Hamm's testimony was inconsistent with, and unsupported by, the medical evidence of record") (citing <u>Carmickle</u>, 533 F.3d at 1161; <u>Burch</u>, 400 F.3d at 681).

1   activities are not easily transferable to what may be the more grueling environment of the
2   workplace." Fair, 885 F.2d at 603.  Only if a claimant's level of activities is inconsistent with
3   her claimed limitations would activities of daily living have any bearing on the claimant's
4   credibility.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5         There are two ways an ALJ may use daily activities for an adverse credibility finding.
6   Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, daily activities can form the basis of an
7   adverse credibility determination if the claimant's activity contradicts the claimant's testimony.
8   Id.  Second, "daily activities may be grounds for an adverse credibility finding 'if a claimant is
9   able to spend a substantial part of his day engaged in pursuits involving the performance of
10  physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d
11  597, 603 (9th Cir. 1989)).  The ALJ must make specific findings as to the daily activities and
12  their transferability to conclude that the claimant's daily activities warrant an adverse credibility
13  determination.  Orn, 495 F.3d at 639.

14        Of note within the records cited by the ALJ, on January 16, 2019, one week after Dr.
15  Guimaraes completed the questionnaire, Plaintiff reported she was "overall" "happy with her
16  medications and progress," and she was working as a massage therapist.  (AR 24, 486-87).  The
17  ALJ accurately noted Plaintiff reported working two jobs and "sometimes" teaching yoga classes
18  in December 2019.  (AR 21, 24, 426 ("She is working two jobs—massage therapist and
19  cosmetology.  Sometimes teaches Yoga classes.").  The ALJ discussed Plaintiff's hobbies, such
20  as reading, dancing, going to Zumba, using Pinterest, photography, and volunteering.  (AR 23.)
21  The ALJ noted that Plaintiff's activities during the relevant period included working, socializing,
22  traveling, going to school, and teaching yoga (AR 20-24, 38-42, 50-53, 210-14, 220-21, 352,
23  444, 450, 468, 487, 520, 532, 535.)  The Court finds the ALJ reasonably found such testimony as
24  well as testimony that she was engaged, met her fiancé at a karaoke bar, and socialized with
25  family, sober friends, and coworkers, as well as reports of traveling with her brother in 2018 and
26  traveling to Paris in 2019, to be inconsistent with Plaintiff's testimony that she is unable to work
27  because she has crying spells, has a breakdown over simple things, has mood swings, anger,
28  loses her temper, appears to be antisocial, has delusions, and experiences tiredness.

1    Accordingly, the Court finds the ALJ's reliance on Plaintiff's activities of daily living to

2  be a clear and convincing reason supported by substantial evidence for discounting Plaintiff's

3  symptom testimony.  Burch, 400 F.3d at 679 ("Where evidence is susceptible to more than one

4  rational interpretation, it is the ALJ's conclusion that must be upheld."); Smolen, 80 F.3d at

5  1279; Thomas, 278 F.3d at 955; Diedrich, 874 F.3d at 642-43.

6         **c.    Compliance with Medication and Reports of Improvement on Medication**

7    "Impairments that can be controlled effectively with medication are not disabling for the

8  purpose of determining eligibility for SSI benefits."  Warre, 439 F.3d at 1006; but see Holohan,

9  246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression

10 makes some improvement does not mean that the person's impairments no longer seriously

11 affect her ability to function in a workplace."); Lule v. Berryhill, No. 1:15-CV-01631 - JLT,

12 2017 WL 541096, at *7 (E.D. Cal. Feb. 10, 2017) ("Although Plaintiff's condition was 'stable'

13 and not worsening, there is no indication the record that the stability of her condition rendered

14 her able to perform work for an eight-hour day.").

15    The Court is not unreceptive to the Plaintiff's arguments concerning stability and

16 improvement in relation to the longitudinal record.  See Herrick v. Comm'r of Soc. Sec., No.

17 1:20-CV-01776-SAB, 2022 WL 1751049, at *13 (E.D. Cal. May 31, 2022) ("Therefore, the

18 Court finds the ALJ's discounting of Plaintiff's testimony on the basis that his seizures are 'stable

19 on medication' impermissibly isolates evidence favorable to the ALJ's conclusion while not

20 accounting for or addressing relevant and potentially conflicting evidence, and fails to

21 adequately account for the longitudinal record.").  The Court finds no error here in the ALJ's

22 reliance on reports of improvement and stability on medication, as well on Plaintiff's periods of

23 worse symptoms when non-compliant with medication.  The ALJ accurately noted "the records

24 indicated that the claimant and her treatment providers have reported improvement to her

25 symptoms with medication compliance."  (AR 24, citing AR 352-412, 425-536.)  The ALJ noted

26 that at the hearing, Plaintiff "testified that her crying spells and outburst seem to be getting better

27 with medication."  (AR 24.)  As discussed above, the ALJ accurately relied upon records

28 regarding Plaintiff being stable, symptoms being well-controlled on medications, and that

1   Plaintiff was variably compliant with medications at other times.  (AR 23-24, 453, 457, 461,

2   481.)

3   　　　The Court finds the ALJ's reliance and balancing of these and other records is a clear and

4   convincing reason for discounting Plaintiff's symptom testimony, and is supported by substantial

5   evidence in the record.  See Warre, 439 F.3d at 1006; Tommasetti, 533 F.3d at 1039 (in assessing

6   credibility, the ALJ may consider an "unexplained or inadequately explained failure to seek

7   treatment or to follow a prescribed course of treatment.") (quoting Smolen, 80 F.3d at 1284).

8   Thus, the Court concludes the ALJ has provided multiple clear and convincing reasons in

9   support of discounting Plaintiff's testimony, and finds no legal error.  The Court now turns to

10   Plaintiff's final challenge to the ALJ's RFC determination.

11   　　　**C.      The Mental RFC Assessment**

12   　　　Plaintiff argues her MRFC is not supported by substantial evidence.  (Br. 26-27.)

13   　　　1.      Legal Standards

14   　　　A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20

15   C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20

16   C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, §

17   416.920(b) and (c), as well as the total limiting effects caused by medically determinable

18   impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v.

19   Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a

20   claimant can do past relevant work and at step five to determine if a claimant can adjust to other

21   work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable,

22   the hypothetical posed must include 'all of the claimant's functional limitations, both physical

23   and mental' supported by the record."  Thomas, 278 F.3d at 956.

24   　　　When applying for disability benefits, the claimant has the duty to prove that she is

25   disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly

26   develop the record and to assure that the claimant's interests are considered."  Widmark v.

27   Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443

28   (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is

1   ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the

2   evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242

3   F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is

4   not required to trigger the necessity to further develop the record where the record itself

5   establishes the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

6           2.      Plaintiff's Arguments

7           Plaintiff takes issue that in addition to rejecting the only long-term, treating physician's

8   well- MRFC MSS, the ALJ also rejected as "not persuasive," the state agency physicians'

9   determination that Plaintiff's mental impairments were "not severe" because "the overall record

10  including some of the claimant's reported symptoms of hallucinations, anger, tearfulness, and

11  difficulty interacting with others as well as her diagnoses in the record, are all more consistent

12  with a finding that the claimant has severe mental impairments and a moderate limitation in the

13  areas of interact with others and concentrate, persist, or maintain pace."  (AR 24).   Plaintiff

14  contends that by rejecting all expert opinions of the limitations resulting from the evidence of

15  record, the ALJ is essentially taking it upon herself to interpret the raw medical evidence of

16  record and formulate her own "function-by- function" MRFC based on her own *lay* knowledge

17  that "reported symptoms of hallucinations, anger, tearfulness, and difficulty interacting with

18  others as well as her diagnoses in the record, are all more consistent with a finding that the

19  claimant has severe mental impairments and a moderate limitation in the areas of interact with

20  others and concentrate, persist, or maintain pace."  (AR 24)

21          Plaintiff submits that by rejecting both the treating and non-examining, non-treating

22  physician MRFC findings, the ALJ is obligated to further develop the claimant's medical history

23  by sending her for a consultative examination; as the ALJ is not permitted to make "an

24  independent evaluation of the diagnosed impairments on plaintiff's ability to work on a function-

25  by-function basis."  Molina v. Berryhill, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *4

26  (E.D. Cal. Dec. 6, 2018).  Plaintiff argues it is well established the ALJ cannot speculate as to a

27  claimant's RFC based upon their own interpretation of medical data.  See Goodman v. Berryhill,

28  No. 2:17-CV-01228 CKD, 2019 WL 79016, at *7 (E.D. Cal. Jan. 2, 2019.

3.    The Court finds the ALJ'S RFC Analysis to be Supported by Substantial
      Evidence in the Record and Free from Legal Error

The Court is not unreceptive to the type of arguments presented by Plaintiff here.  See Daniel Garcia v. Comm'r of Soc. Sec., No. 1:18-CV-00914-SAB, 2019 WL 3283171, at *7 (E.D. Cal. July 22, 2019).  Here however, the Court does not find the ALJ improperly interpreted medical data, or improperly made an RFC determination due to not directly adopting an RFC finding from a physician opinion.

The Court determined above that the ALJ properly discounted Dr. Guimaraes' opinion in reasonable consideration of the both the evidence in favor of Plaintiff's position, and against a disability determination.  In this instance, based on all of the evidence of record and the ALJ's summary, citation to, and analysis of such records, the Court finds the ALJ's discounting of the state agency physician opinions that found Plaintiff's mental impairments were not even severe, enhances the Court's view that the ALJ reasonably weighed all of the medical evidence and opinions together in formulating the RFC.  The ALJ found that Plaintiff had the mental RFC to sustain concentration, persistence, and pace for 2-hour intervals "after which she requires a 10-minute break that can be accommodated by morning, afternoon, and lunch breaks. " (AR 22-23.) In addition, the ALJ limited Plaintiff to only occasional interaction with coworkers, supervisors, and the public.  (Id.)

The Court finds substantial evidence in support of Defendant's arguments that Dr. Guimaraes's treatment notes are in fact consistent with the RFC assessment.  (AR 20-24, 352-408, 425-536.)  Regardless, Plaintiff has not provided legal authority requiring an ALJ to adopt a single medical source opinion to determine the RFC.  The ALJ was not required to adopt the findings or opinion of any of the physicians but rather was required to determine the RFC based on all of the evidence in the record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating

1    and incorporating clinical findings into a succinct RFC"); Vertigan, 260 F.3d at 1049 ("It is clear

2    that it is the responsibility of the ALJ, not the claimant's physician, to determine residual

3    functional capacity.").   The regulations provide that the agency "will not defer or give any

4    specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

5    administrative medical finding(s), including those from your medical sources."   20 C.F.R. §

6    404.1520c(a).

7         The Court does not find the ALJ was required to order a consultative exam.   The

8    regulations provide the following guidance for utilizing evidence in assessing an RFC, and

9    allows for ordering a consultative exam "if necessary":

> (3) Evidence we use to assess your residual functional capacity.
> We will assess your residual functional capacity based on all of the
> relevant medical and other evidence. In general, you are
> responsible for providing the evidence we will use to make a
> finding about your residual functional capacity.   (See §
> 404.1512(c).) However, before we make a determination that you
> are not disabled, we are responsible for developing your complete
> medical history, including arranging for a consultative
> examination(s) if necessary, and making every reasonable effort to
> help you get medical reports from your own medical sources.

16    20 C.F.R. § 404.1545(a)(3).  The regulations further provide a non-exhaustive list of examples of

17    when the agency may purchase a consultative exam: "(1) The additional evidence needed is not

18    contained in the records of your medical sources; (2) The evidence that may have been available

19    from your treating or other medical sources cannot be obtained for reasons beyond your control,

20    such as death or noncooperation of a medical source; (3) Highly technical or specialized medical

21    evidence that we need is not available from your treating or other medical sources; or (4) There

22    is an indication of a change in your condition that is likely to affect your ability to work, or, if

23    you are a child, your functioning, but the current severity of your impairment is not established."

24    20 C.F.R. § 416.919a(b)(1)-(4).

25         The Court finds the ALJ utilized substantial evidence in the record in making her RFC

26    determination, and Plaintiff has not demonstrated a consultative examination was necessary to

27    further develop the record.   Plaintiff has offered no showing that such an examination was

28    needed to resolve an inconsistency in the evidence, or that the evidence was insufficient as a

1   whole to make a determination or that it was necessary to secure needed medical evidence, such
2   as clinical findings, laboratory tests, a diagnosis, or prognosis.  See Karen E. v. Berryhill, No.
3   ED CV 17-918-SP, 2019 WL 1405835, at *3 (C.D. Cal. Mar. 27, 2019) ("Certainly it may have
4   been helpful for the ALJ to retain a medical expert to review these records, but it was not
5   necessarily required where, as here, the ALJ reviewed the substantial medical evidence that
6   supported his RFC determination with respect to plaintiff's lower back pain."); Breen v.
7   Callahan, No. C 97-1389 CRB, 1998 WL 272998, at *3-4 (N.D. Cal. May 22, 1998) ("The
8   decision to order a consultative examination is, however, discretionary . . . and is only required
9   when the record establishes that such an examination is necessary to enable the ALJ to resolve
10  the issue of disability.").

11         The facts in this case are not similar to other instances in which the ALJ was found to
12  have a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by
13  relying on testimony of physician who indicated more information was needed to make
14  diagnosis); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by
15  failing to develop record where he relied on the opinion of a physician who recognized he did
16  not have sufficient information to make a diagnosis).   The Court finds the ALJ's RFC
17  determination to be proper, reasonable, based on substantial evidence in the record, and not
18  deficient due to lack of use of a medical opinion.

19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

**V.**

**CONCLUSION AND ORDER**

Based on all of the foregoing reasons, the Court finds: (1) substantial evidence supports the ALJ's rejection of treating physician Dr. Guimaraes' medical source statement; (2) the ALJ provided multiple clear and convincing reasons for rejecting Plaintiff's symptomology evidence; and (3) the ALJ's mental residual functional capacity finding is proper and supported by substantial evidence.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Katarina Marie Cox.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **August 23, 2022**

UNITED STATES MAGISTRATE JUDGE